UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tracey Skoglund,

Plaintiff,

vs.

Search America, Inc.,
Experian Information Solutions, Inc.,
Experian Marketing Solutions, Inc., and
Experian Services Corp.,

Defendants.

Court File No. _______________

**COMPLAINT**
**JURY TRIAL DEMANDED**

---

Plaintiff, by his attorneys, Fabian May & Anderson, PLLP, brings this action for damages and other legal and equitable relief resulting from Defendants' violations of law. Plaintiff states the following as his claims against Defendants.

**JURISDICTION AND VENUE**

1. This action arises under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12010, *et seq.*, as amended by the ADA Amendments Act of 2008. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331.

2. Plaintiff also asserts claims under the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 *et seq.* Jurisdiction for the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

3. The unlawful practices described hereinafter were committed in the District of Minnesota and Defendants do business in the state of Minnesota.

## PARTIES

4. Plaintiff Tracey Skoglund ("Plaintiff" or "Skoglund"), is an individual who is a citizen of the State of Minnesota.

5. Defendant Search America, Inc. ("SearchAmerica") is a corporation formed under the laws of the State of Minnesota, with principal offices located in Minnesota.

6. Defendant Experian Information Solutions, Inc. is a corporation formed under the laws of the State of Ohio, with principal offices located in Costa Mesa, California.

7. Defendant Experian Marketing Solutions, Inc. is a corporation formed under the laws of Delaware, with principal offices located in Costa Mesa, California.

8. Defendant Experian Services Corp. is a corporation formed under the laws of Delaware, with principal offices located in Costa Mesa, California.

9. At all relevant times, Defendants (hereinafter collectively referred to as "Experian") were integrated employers for purposes of federal and state antidiscrimination laws.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

10. In or around June 2010, a representative of Experian contacted Plaintiff about working for Experian as a SearchAmerica Implementation Consultant/Project Manager (the "position"). Based upon statements made by the representative, Plaintiff understood the position would allow him the ability to work primarily from home. Plaintiff expressed interest in the position.

11. Plaintiff subsequently participated in a number of interviews for the position, during which Plaintiff stated he was in the process of restorative therapy for injuries suffered in a motor vehicle accident in 2008. As a result of the motor vehicle accident, Plaintiff's neurological and musculoskeletal systems are substantially and/or materially limited.

12. Plaintiff explained during the interviews that the opportunity to work from home would provide him the necessary flexibility to manage his restorative therapy sessions and visits with medical professionals and specialists. Experian told Plaintiff during these interviews that the SearchAmerica/Experian Project Management team employees were allowed to work from their homes, and if hired for the position, Plaintiff would also be allowed to work from home.

13. In or around August 2010, Experian offered Plaintiff the position. Plaintiff accepted the offer based in part on Experian's representation that he would be working from home and would have the flexibility to attend his medical and rehabilitative appointments.

14. Plaintiff commenced his employment with Experian on August 23, 2010, reporting to Project Management Director Dave Kooser ("Kooser"), who worked from his home in Colorado.

15. After commencing employment with Experian, Plaintiff received several compliments on his work from Kooser and other managers, and was assigned progressively more high-profile projects.

16. In a mid-February 2011 telephone discussion, Kooser asked Plaintiff why he had arrived only a few minutes before an in-office meeting the day before. Plaintiff explained that he had arrived shortly after having completed his daily restorative therapy sessions and that his follow up with physicians took slightly more time than anticipated.

17. Kooser then pressured Plaintiff to provide detailed information about the nature of his physical limitations and therapy needs, growing progressively more hostile during the call. Plaintiff reminded Kooser about the serious auto accident and rehabilitation needs he had disclosed during initial interviews, at which point Kooser accused Plaintiff of being "intentionally evasive" and stated that he had the right as Plaintiff's supervisor to know all of the details regarding Plaintiff's medical condition. When Plaintiff disagreed, Kooser raised his voice in anger, indicating that he was from a "military family," and likened the medical information he was demanding to that which any recruit intending to join the armed services would have to provide. Kooser also accused Plaintiff of not fully disclosing his medical condition pre-employment.

18. Plaintiff explained during the call that he was performing the essential functions of the position and preferred to keep the specific nature of his condition private. Kooser nevertheless demanded to know if Plaintiff was "permanently damaged." Feeling coerced by Kooser's aggressive inquiry, Plaintiff told Kooser that he had been diagnosed with some permanent disabilities relating to a "Post-Traumatic Brain Injury" condition resulting from the accident, but stressed that none of these disabilities would prevent him from performing his job.

19. Kooser said he doubted that Plaintiff needed therapy so long after the accident. Kooser then ended the call after chastising Plaintiff for not providing a more detailed disclosure of his medical condition during the pre-employment screening process.

20. Following the mid-February 2011 phone call, Kooser began referring to Plaintiff as “handicapped”, “weak”, “defective”, “broken”, “crippled,” and in other derogatory terms.

21. Also shortly after the mid-February 2010 phone call, Kooser revoked Plaintiff’s ability to work from home, requiring him instead to work in SearchAmerica’s Maple Grove office. Plaintiff asked Kooser to reconsider the requirement to work at the office, but Kooser refused. Plaintiff then stated that he had no choice but to formally request working from home as a reasonable accommodation for his medical condition. Kooser immediately rejected this request, telling Plaintiff that his “special needs” and “limitations” actually mandated that he be subject to heightened scrutiny which could only be provided in an office setting.

22. Also following the mid-February 2011 phone call, Kooser refused to authorize Plaintiff’s use of company-provided paid time off to attend physical therapy appointments. When Plaintiff informed Kooser that he would bring this accommodation request to Human Resources, Kooser warned Plaintiff that he would “be ill advised to do so,” and that “repercussions would follow.”

23. Kooser also informed Plaintiff that effective immediately, Kooser would have to be involved in and present during every customer meeting and/or work-related

call to or from a client placed or received by Plaintiff, telling Plaintiff that his "claim of disabilities" and "request for special treatment" made Kooser doubt Plaintiff's ability to exercise independent and appropriate judgment in dealing with clients.

24. Plaintiff subsequently reported Kooser's conduct to Human Resource Director Susan Hanson ("Hanson"), who suggested he raise his concerns about his supervisor at an Experian "Employee Empowerment" session in late February 2011, which she specifically invited Plaintiff to attend.

25. In late February 2011, Kooser, Plaintiff, Hanson and other employees attended the "Employee Empowerment" session. During the session, Kooser pressed Plaintiff to reveal to the group his specific appraisal of Kooser's management. Plaintiff responded that he had concerns about Kooser's ability to allow employees to work independently, concerns involving restrictive work conditions not applicable to other team members, and concerns about an ongoing breach of boundaries between appropriate workplace information and confidential employee medical information. Plaintiff also stated he had been made to feel uncomfortable approaching others in the company regarding these issues.

26. On or about February 28, 2011, Kooser angrily confronted Plaintiff about Plaintiff's statements at the "Employee Empowerment" session, telling Plaintiff that his criticisms reflected poorly on Kooser's management. Kooser told Plaintiff that from that point forward, Plaintiff would be required to involve Kooser in every workplace communication of every kind. When Plaintiff tried to engage Kooser regarding this requirement, Kooser cut him off, informing Plaintiff that his mental and physical

disabilities led Kooser to have no confidence that Plaintiff could effectively communicate with anyone. Plaintiff responded that he intended to take the issue to Human Resources, after which Kooser threatened immediate consequences, "up to and including termination."

27. Plaintiff subsequently reported Kooser's conduct to Hanson, who indicated a reluctance to intervene, citing Kooser's Director level responsibilities. Plaintiff then attempted to report Kooser's conduct to Human Resources at Experian's US based headquarters, but each time was referred back to his local Human Resources representative. Neither Hanson nor anybody else took any apparent action to address Plaintiff's complaint about Kooser's conduct.

28. On or about March 4, 2011, Hanson called Plaintiff into a meeting in her office and told him that Kooser was present by speaker phone. Hanson then proceeded to tell Plaintiff that, due to Kooser's sudden loss in confidence in Plaintiff's competence and ability to do the job, Plaintiff was being dismissed. When Plaintiff pressed for details about what specific incidents had led to this alleged "loss of confidence," Hanson stated there were none, but that it was simply based on Kooser's "feeling."

29. After Kooser left the meeting, Hanson repeated that no specific incidents had been cited by Kooser or anyone else for the alleged sudden loss of confidence, that she was unaware of any negative feedback about Plaintiff, and that the feedback about Plaintiff from clients and co-workers had been uniformly positive. Hanson then encouraged Plaintiff to seek other Experian positions outside of Kooser's management.

**COUNT I**

**DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112.**

30. By reference hereto, Plaintiff incorporates the paragraphs above.

31. At all times material hereto, Plaintiff was Experian's "employee" within the meaning of 42 U.S.C. § 12111(4), and Experian was a "covered entity" within the meaning of 42 U.S.C. § 12111(2).

32. 42 U.S.C. § 12112(a) provides that an employer shall not discriminate against a qualified individual on the basis of disability in regard to the employee's compensation, discharge, and other terms, conditions, and privileges of employment.

33. By its conduct, Experian discriminated against Plaintiff in violation of 42 U.S.C. § 12112.

34. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

**COUNT II**

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112.**

35. By reference hereto, Plaintiff incorporates the paragraphs above.

36. 42 U.S.C. § 12112 provides that an employer shall make reasonable accommodations for the known disabilities of its employees.

37. Experian violated 42 U.S.C. § 12112 by failing to reasonably accommodate Plaintiff's known disabilities.

38. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

**COUNT III**

**RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(a).**

39. By reference hereto, Plaintiff incorporates the paragraphs above.

40. 42 U.S.C. § 12203(a) prohibits retaliation against any individual because he opposed any act or practice made unlawful by the ADA.

41. By its conduct, Experian retaliated against Plaintiff in violation of 42 U.S.C. § 12203(a).

42. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

**COUNT IV**

**THREAT, INTIMIDATION, AND COERCION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(b).**

43. By reference hereto, Plaintiff incorporates the paragraphs above.

44. 42 U.S.C. § 12203(b) provides "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this Chapter."

45. By its conduct, Experian violated 42 U.S.C. § 12203(b).

46. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

**COUNT V**

**DISABILITY DISCRIMINATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.08, SUBD. 2.**

47. By reference hereto, Plaintiff incorporates the paragraphs above.

48. At all times material hereto, Plaintiff was Experian's "employee" and Experian was his "employer" within the meaning of Minn. Stat. § 363A.03.

49. Minn. Stat. § 363A.08, subd. 2 provides it is an unfair employment practice for an employer to discharge or otherwise discriminate against an employee with respect to the terms, compensation, conditions, facilities, or privileges of employment, because of the employee's disability.

50. By its conduct, Experian discriminated against Plaintiff in violation of Minn. Stat. § 363A.08, subd. 2.

51. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

**COUNT VI**

**FAILURE TO ACCOMMODATE IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT, MINN. STAT. § 363A.08, SUBD. 6.**

52. By reference hereto, Plaintiff incorporates the paragraphs above.

53. Minn. Stat. § 363A.08, subd. 6 provides it is an unfair employment practice for an employer not to make reasonable accommodation to the known disability of a qualified disabled person.

54. Experian violated Minn. Stat. § 363A.08, subd. 6 by failing to reasonably accommodate Plaintiff's known disabilities.

55. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.

## COUNT VII

## REPRISAL IN VIOLATION OF MINN. STAT. § 363A.15

56. By reference hereto, Plaintiff incorporates the paragraphs above.

57. Minn. Stat. § 363A.15 provides that it is an unfair discriminatory practice for any person to intentionally engage in any reprisal against any person because that person opposed a practice or act of discrimination.

58. By its conduct, Experian violated Minn. Stat. § 363A.15.

59. As a direct and proximate result of Experian's conduct, Plaintiff has suffered and continues to suffer loss of income and employment benefits, mental anguish, emotional distress, and other damages in an amount exceeding $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tracey Skoglund prays for judgment against Defendants Search America, Inc., Experian Information Solutions, Inc., Experian Marketing Solutions, Inc., and Experian Services Corp. as follows:

A. For all damages available for Defendants' violations of the Americans with Disabilities Act, including, but not limited to, damages for lost wages and benefits, emotional distress, interest on those amounts, and punitive damages;

B. For all damages available for Defendants' violations of the Minnesota Human Rights Act, including, but not limited to, damages for lost wages and benefits, emotional distress, interest on those amounts, treble damages, and punitive damages;

C. For Plaintiff's attorneys' fees, costs and disbursements; and

D. For such further and other relief as the Court deems just.

Dated: 6-5-12

**FABIAN MAY & ANDERSON, PLLP**

John A. Fabian, #13482X
David H. Redden, #391496
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
Telephone: (612) 353-3343
jfabian@fmalawyers.com
dredden@fmalawyers.com
**ATTORNEYS FOR PLAINTIFF**